# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERT CIARCIELLO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIOVENTUS INC., KENNETH M. REALI, MARK L. SINGLETON, GREGORY O. ANGLUM, WILLIAM A. HAWKINS III, PHILLIP G. COWDY, GUIDO J. NEELS, GUY P. NOHRA, DAVID J. PARKER, SUSAN M. STALNECKER, and MARTIN P. SUTTER,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Ciarciello ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bioventus Inc. ("Bioventus" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Bioventus Class A common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about February 11, 2021 (the "IPO" or "Offering"); and/or (b) Bioventus securities between February 11, 2021 and November 21, 2022, both dates inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Bioventus is a medical device company that focuses on developing and commercializing clinical treatments to engage and enhance the body's natural healing process.

3.     On January 20, 2021, Bioventus filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on February 10, 2021 (the "Registration Statement").

4.     On or about February 11, 2021, pursuant to the Registration Statement, Bioventus conducted the IPO, issuing 8 million shares of its Class A common stock to the public at the Offering price of $13.00 per share.

5.     On February 12, 2021, Bioventus filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

6.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing

2

their preparation. Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bioventus suffered from significant liquidity issues; (ii) the Company's rebate practices were unsustainable; (iii) accordingly, Defendants overstated the Company's business and financial prospects; (iv) Bioventus maintained deficient disclosure controls and procedures and internal control over financial reporting with respect to the timely recognition of quarterly rebates; (v) all the foregoing increased the risk that the Company would be forced to recognize a significant non-cash impairment charge, could not timely file one or more of its financial reports, would have to amend one or more of its financial statements, and could not meet its financial obligations as they came due; and (vi) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

7.     On November 16, 2022, Bioventus issued a press release announcing that it could not timely file its quarterly report for third quarter of 2022 because "of the recent decline in the Company's market capitalization subsequent to its previously announced financial results for the third quarter of 2022," which resulted in the Company needing "additional time . . . to assess whether a non-cash impairment charge is required for the third quarter of 2022." Bioventus also revealed that it "is seeking resolution related to the validity of a revised invoice" for certain "rebate claims" and that "[t]he recognition of additional rebates may impact Bioventus' recently announced revenue guidance." In addition, Bioventus disclosed that "its internal controls related to the timely recognition of quarterly rebates were inadequate specifically for the period ended October 1, 2022" and that the Company "is also evaluating whether [it] will be able to meet all of

3

its financial obligations as they come due within one year after the date its financial statements for the period ended October 1, 2022, are issued."

8. On this news, Bioventus's stock price fell $1.00 per share, or 33.67%, to close at $1.97 per share on November 17, 2022.

9. Then, on November 21, 2022, Bioventus issued a press release announcing revised third quarter 2022 results to account for "additional rebate claims related to certain of the Company's products and a non-cash impairment charge" that amounted to $189.2 million "due to the recent decline in our market capitalization subsequent to our previously announced financial results for the three and nine months ended October 1, 2022." That same day, Bioventus belatedly filed its quarterly report on Form 10-Q with the SEC for the third quarter of 2022, advising of various changes to Bioventus's historical practices that were necessary to account for rebates, stating that these changes materially impacted the Company's evaluation of its ability to meet debt covenants, resulting in liquidity and going concern disclosures.

10. On this news, Bioventus's stock price fell $0.07 per share, or 3.72%, to close at $1.81 per share on November 22, 2022, representing a total decline of 86.08% from the IPO price.

11. As of the time this Complaint was filed, Bioventus's Class A common stock continues to trade below the $13.00 per share Offering price, damaging investors.

12. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15

4

U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Bioventus is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

16. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

17. Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Bioventus Class A common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Bioventus securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18. Defendant Bioventus is a Delaware corporation with principal executive offices located at 4721 Emperor Boulevard, Suite 100, Durham, North Carolina 27703. The Company's Class A common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "BVS".

Case 1:23-cv-00032-CCE-JEP   Document 1   Filed 01/12/23   Page 5 of 33

19.     Defendant Kenneth M. Reali ("Reali") has served as Bioventus's Chief Executive Officer and a Director of the Company at all relevant times. Reali signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendant Mark L. Singleton ("Singleton") has served as Bioventus's Senior Vice President ("SVP") and Chief Financial Officer ("CFO") since March 21, 2022.

21.     Defendant Gregory O. Anglum ("Anglum") served as Bioventus's SVP and CFO from before the start of the Class Period until on or around March 21, 2022. Anglum signed or authorized the signing of the Registration Statement filed with the SEC.

22.     Defendants Reali, Singleton, and Anglum are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

23.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Bioventus's SEC filings, press releases, and other market communications. The Exchange Act Individual Defendants were provided with copies of Bioventus's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Bioventus, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

24.     Bioventus and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

25. Defendant William A. Hawkins III ("Hawkins") has served as Bioventus's Chairman at all relevant times. Hawkins signed or authorized the signing of the Registration Statement filed with the SEC.

26. Defendant Phillip G. Cowdy ("Cowdy") has served as a Director of Bioventus at all relevant times. Cowdy signed or authorized the signing of the Registration Statement filed with the SEC.

27. Defendant Guido J. Neels ("Neels") has served as a Director of Bioventus at all relevant times. Neels signed or authorized the signing of the Registration Statement filed with the SEC.

28. Defendant Guy P. Nohra ("Nohra") has served as a Director of Bioventus at all relevant times. Nohra signed or authorized the signing of the Registration Statement filed with the SEC.

29. Defendant David J. Parker ("Parker") served as a Director of Bioventus at the time of the IPO. Parker signed or authorized the signing of the Registration Statement filed with the SEC.

30. Defendant Susan M. Stalnecker ("Stalnecker") has served as a Director of Bioventus at all relevant times. Stalnecker signed or authorized the signing of the Registration Statement filed with the SEC.

31. Defendant Martin P. Sutter ("Sutter") has served as a Director of Bioventus at all relevant times. Sutter signed or authorized the signing of the Registration Statement filed with the SEC.

32. Defendants Reali, Anglum, Hawkins, Cowdy, Neels, Nohra, Parker, Stalnecker, and Sutter are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

33. As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Bioventus common stock in the IPO for their own benefit and the benefit of the Company. The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

34. Bioventus and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

35. The Exchange Act Defendants and the Securities Act Defendants are sometimes, in whole or in part, collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

36. Bioventus is a medical device company that focuses on developing and commercializing clinical treatments to engage and enhance the body's natural healing process. The Company offers pain treatments, peripheral nerve stimulation products, surgical solutions, ultrasonic medical devices, and restorative therapies. Bioventus serves physicians in various orthopedic settings.

37. On January 20, 2021, Bioventus filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on February 10, 2021.

8

38.     On or about February 11, 2021, pursuant to the Registration Statement, Bioventus conducted the IPO, issuing 8 million shares of its Class A common stock to the public at the Offering price of $13.00 per share.

39.     On February 12, 2021, Bioventus filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

### Materially False and Misleading Statements Issued in the Offering Documents

40.     The Offering Documents highlighted "several key strengths that provide [Bioventus] with a competitive advantage" including, *inter alia*, "[b]road customer reach and market access" and "[r]obust free cash flow conversion."

41.     For example, the Offering Documents stated "that our broad customer reach and market access are key factors contributing to our ability to increase our market share and grow faster than our competitors" and that "[w]e believe we will continue to be well-positioned in the market given our strong foundation for reimbursement and customer access, coupled with a broad portfolio of clinically differentiated products."

42.     With respect to Bioventus's purportedly robust free cash flow conversion, the Offering Documents stated, in relevant part:

> We believe that our robust free cash flow conversion and scale enables us to invest in our business in a meaningful way. Over the last four years, we have self-funded all internal research and development and business development efforts . . . . Our free cash flow conversion, defined as free cash flow divided by Adjusted EBITDA, was 78% for the year ended December 31, 2019 and 93% from 2018 through September 26, 2020. With $340.1 million in revenues for the year ended December 31, 2019, we also have scale to pursue opportunities to grow our business, including internationally to regions such as China. Our attractive cash generation has and will continue to allow us to expand our deep pipeline of products through further internal research and development investment and additional tuck-in acquisitions that leverage our established infrastructure.

9

43. With respect to Bioventus's liquidity and capital resources, the Offering Documents stated, *inter alia*:

> Our principal liquidity needs have historically been for acquisitions, working capital, research and development, clinical trials, and capital expenditures. We expect these needs to continue as we develop and commercialize new products and further our expansion into international markets. We believe that our existing cash and cash equivalents, borrowing capacity under our revolving credit facility, cash flow from operations and net proceeds from this offering will be enough to meet our anticipated cash requirements for at least the next twelve months. We may require additional liquidity as we continue to execute our business strategy . . . . We anticipate that to the extent that we require additional liquidity, we will obtain funding through the incurrence of other indebtedness, additional equity financings or a combination of these potential sources of liquidity. In addition, we may raise additional funds to finance future cash needs through receivables or royalty financings or corporate collaboration and licensing arrangements . . . . The covenants under our credit agreement limit our ability to obtain additional debt financing. We cannot be certain that additional funding will be available on acceptable terms, or at all. Any failure to raise capital in the future could have a negative impact on our financial condition and our ability to pursue our business strategies.

44. With respect to Bioventus's rebate practices and related accounting procedures, the Offering Documents stated, in relevant part, that "[w]e offer . . . rebates linked to the volume of purchases which may increase at negotiated thresholds within a contract-buying period"; that "[w]e reduce revenue and record the reserve as a reduction to accounts receivable for the estimated . . . rebate at the most likely amount the customer will earn, based on historical buying trends and forecasted purchases"; and that "[t]he Company also enters arrangements with pharmacy and health benefit managers that provide for negotiated rebates, chargebacks and discounts with respect to the purchase of the Company's products."

45. The statements referenced in ¶¶ 40-44 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

10

Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Bioventus suffered from significant liquidity issues; (ii) the Company's rebate practices were unsustainable; (iii) accordingly, Defendants overstated the Company's business and financial prospects; (iv) all the foregoing increased the risk that the Company would be forced to recognize a significant non-cash impairment charge, could not timely file one or more of its financial reports, would have to amend one or more of its financial statements, and could not meet its financial obligations as they came due; and (v) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

### Materially False and Misleading Statements Issued During the Class Period

46.     The Class Period begins on February 11, 2021, when Bioventus's Class A common stock began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions contained in the Offering Documents, as referenced in ¶¶ 40-44, *supra.*

47.     On March 25, 2021, Bioventus issued a press release announcing its fourth quarter and full year 2020 results. That press release quoted Defendant Reali, who stated, in relevant part, that "[t]he substantial improvements in our execution and operating achievements that we delivered in 2020 have continued in 2021" and that "[w]e have significantly enhanced our balance sheet and financial condition with the net proceeds raised in our IPO in February and believe we are well positioned to execute our growth strategy going forward."

48.     On March 26, 2021, Bioventus filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2020 (the "2020 10-K"). With respect to Bioventus's business and financial prospects, the 2020 10-K stated, *inter alia*, that "[w]e believe that our broad customer reach has and will continue to enable strong and durable growth in each of our verticals and provides a significant foundation

11

for future product launches" and that "[w]e plan to continue to expand our business and to increase our net sales and profitability by executing on [various] strategies."

49. The 2020 10-K also contained substantively the same statements as referenced in ¶ 43, *supra*, regarding Bioventus's liquidity and capital resources, including that "[w]e believe that our existing cash and cash equivalents, borrowing capacity under our revolving credit facility, cash flow from operations, and net proceeds from our IPO will be enough to meet our anticipated cash requirements for at least the next twelve months."

50. Moreover, the 2020 10-K contained substantively the same statements as referenced in ¶ 44, *supra*, regarding Bioventus's rebate practices and related accounting procedures, while also downplaying the negative impact that rebates were having on the Company's cash flow from operating activities, stating, in relevant part: "Cash flows from operating activities from continuing operations increased $29.7 million during the year ended December 31, 2020 compared to year ended December 31, 2019 due to collections on accounts receivables staying strong while selling, general and administrative expenses declined, partially offset by the timing of rebate payments."

51. The 2020 10-K also assured investors that "our disclosure controls and procedures were effective at the reasonable assurance level as of December 31, 2020", while noting that the Company had recently "remediated a material weakness associated with the proper processing of . . . reimbursement claims" for one of the Company's products, including the "implement[ation of various] . . . measures to improve our internal controls and remediate the material weakness[.]"

52. Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2022 ("SOX"), wherein Defendants Reali and Anglum certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]"

12

and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

53.     On May 12, 2021, Bioventus issued a press release announcing its first quarter 2021 results. That press release quoted Defendant Reali, who stated, in relevant part:

> Bioventus delivered better-than-expected first quarter revenue results, driven primarily by accelerating U.S. sales growth trends as we moved through the quarter, culminating with nearly 30% year-over-year growth in March[.]
>
> * * *
>
> We have significantly enhanced our balance sheet and financial condition with the net proceeds raised in our IPO in February and believe we are well positioned to execute our strategy to accelerate our multi-year growth profile with continued progress in our clinical, product development and new product pipeline and our pursuit of in-organic business development opportunities.

54.     On May 13, 2021, Bioventus filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's fiscal first quarter ended April 3, 2021 (the "1Q21 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 43 and 49, *supra*, regarding Bioventus's liquidity and capital resources.

55.     The 1Q21 10-Q also assured investors that "our disclosure controls and procedures were effective at the reasonable assurance level as of April 3, 2021" and that "[t]here were no changes in our internal control over financial reporting that occurred during the quarterly period covered by th[e 1Q21 10-Q] that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

56.     Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 52, *supra*, signed by Defendants Reali and Anglum.

57.     On August 10, 2021, Bioventus issued a press release announcing its second quarter 2021 results. That press release quoted Defendant Reali, who stated, in relevant part:

Bioventus delivered strong second quarter results, driven by our team's ability to build upon the momentum we saw exiting the first quarter. We achieved significant sequential quarterly growth and year over year growth while also obtaining double digit organic growth in comparison to Q2 2019 for legacy Bioventus . . . . We have raised our full year 2021 financial guidance and we believe we are well positioned to execute our strategy to accelerate our multi-year growth profile.

58.     On August 11, 2021, Bioventus filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's fiscal second quarter ended July 3, 2021 (the "2Q21 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 43, 49, and 55, *supra*, regarding Bioventus's liquidity and capital resources, purportedly effective disclosure controls and procedures, and internal control over financial reporting.

59.     Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 52, *supra*, signed by Defendants Reali and Anglum.

60.     On November 9, 2021, Bioventus issued a press release announcing its third quarter 2021 results. That press release quoted Defendant Reali, who stated, in relevant part:

During the third quarter, we continued building momentum across our diversified portfolio as the Bioventus (BIOV) team demonstrated strong execution and resiliency, driving double-digit organic growth despite some pandemic related headwinds . . . . The strong performance of our organization has enabled us to again raise our full-year revenue guidance.

61.     On November 10, 2021, Bioventus filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's fiscal third quarter ended October 2, 2021 (the "3Q21 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 43, 49, and 55, *supra*, regarding Bioventus's liquidity and capital resources, purportedly effective disclosure controls and procedures, and internal control over financial reporting.

14

62. Appended as exhibits to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 52, *supra*, signed by Defendants Reali and Anglum.

63. On March 10, 2022, Bioventus issued a press release announcing its fourth quarter and full year 2021 results. That press release quoted Defendant Reali, who stated, in relevant part:

> The Bioventus team exhibited strong execution and resilience through a transformational year in 2021. We were able to significantly strengthen our business through M&A while also driving above-market growth in Pain Treatments and Surgical Solutions . . . . [W]e enter 2022 keenly focused on achieving double-digit organic revenue growth, delivering on our cost-synergy commitments, and completing our anticipated acquisition of CartiHeal, which we believe is a transformational technology in the treatment of knee osteoarthritis. I am confident that our enhanced portfolio will enable us to expand our customer relationships, further penetrate the markets we compete in and strengthen our growth levers as we create value for all our stakeholders over 2022 and beyond.

64. On March 11, 2022, Bioventus filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K"). That filing contained substantively the same statements as referenced in ¶¶ 43-44, 49, and 55, *supra*, regarding Bioventus's liquidity and capital resources, rebate practices and related accounting procedures, and purportedly effective disclosure controls and procedures, while adding that, "as of December 31, 2021, the Company's internal control over financial reporting is effective."

65. Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced ¶ 52, *supra*, signed by Defendants Reali and Anglum.

66. On May 10, 2022, Bioventus issued a press release announcing its first quarter 2022 results. That press release quoted Defendant Reali, who stated, in relevant part:

> We are pleased with our strong start to the year as we continue to build our market penetration and drive growth despite a challenging macro environment. Our commercial organization executed well, and we saw progress with our integration plans . . . . [W]e are encouraged by the momentum we're seeing across our key

short- and mid-term growth drivers, which position us for sustained double-digit growth and margin expansion.

67.     On May 11, 2022, Bioventus filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's first fiscal quarter ended April 2, 2022 (the "1Q22 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 43, 49, and 55, *supra*, regarding Bioventus's liquidity and capital resources, purportedly effective disclosure controls and procedures, and internal control over financial reporting, apart from certain changes related to "the claims workflow process and implementing claims workflow and patient collections software" and the "[f]inalization of the integration of" one of the businesses that the Company had acquired.

68.     Appended as exhibits to the 1Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 52, *supra*, signed by Defendants Reali and Singleton.

69.     On August 11, 2022, Bioventus issued a press release announcing its second quarter 2022 results. That press release quoted Defendant Reali, who stated:

> Our team achieved strong growth in the second quarter and continued to make meaningful progress with our integration plans from our recent acquisitions. We continue to drive above market growth and market share gains across our pain treatments and surgical solutions businesses as we look to meet our goal of total double digit organic business growth for the year . . . . We are encouraged by the sustained momentum across our key short- and mid-term growth drivers and believe our recently completed acquisition of CartiHeal, a breakthrough product for cartilage repair, will bolster our mid-term growth.

70.     On August 12, 2022, Bioventus filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's second fiscal quarter ended July 2, 2022 (the "2Q22 10-Q"). That filing contained substantively the same statements as referenced in ¶¶ 43, 49, and 55, *supra*, regarding Bioventus's liquidity and capital resources,

purportedly effective disclosure controls and procedures, and internal control over financial reporting.

71. Appended as exhibits to the 2Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 52, *supra*, signed by Defendants Reali and Singleton.

72. On November 8, 2022, Bioventus issued a press release announcing its third quarter 2022 results (the "Q3 Earnings Release"). Among other results, that press release reported "Net Sales of $137.1 million, up $28.2 million, or 25.9%, year-over-year as reported (26.8% constant currency*) and 7.3% organically* (8.1% constant currency*)"; "Net Income of $3.2 million, compared to Net Loss of $2.3 million in prior-year period"; "Adjusted EBITDA* of $22.7 million, compared to $21.3 million in prior-year period"; "[b]asic earnings per share of Class A common stock of $0.03, compared to a loss per share of ($0.03) in prior-year period"; and "Non-GAAP earnings per share of Class A common stock* of $0.08, compared to $0.19 in prior-year period[.]"

73. The Q3 Earnings Release also stated that, "[f]or the twelve months ending December 31, 2022, the Company . . . expects . . . [n]et sales of $527 million to $532 million, representing year-over-year growth of approximately 22% to 23%[.]"

74. In addition, the Q3 Earnings Release quoted Defendant Reali, who stated:

> Our team continues to drive long-term growth by integrating our acquisitions, advancing our transformation and gaining market share with our innovative and proven medical devices . . . . Though we experienced some temporary reimbursement related volatility, we drove above-market growth, demonstrating the success of our ongoing integrations and the strength of our diversified portfolio. We are excited by the recent CartiHeal acquisition which will drive significant growth for Bioventus (BIOV) as we enter a fast growing and large market in cartilage replacement.

75. The statements referenced in ¶¶ 47-74 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.

17

Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Bioventus suffered from significant liquidity issues; (ii) the Company's rebate practices were unsustainable; (iii) accordingly, Defendants overstated the Company's business and financial prospects; (iv) Bioventus maintained deficient disclosure controls and procedures and internal control over financial reporting with respect to the timely recognition of quarterly rebates; (v) all the foregoing increased the risk that the Company would be forced to recognize a significant non-cash impairment charge, could not timely file one or more of its financial reports, would have to amend one or more of its financial statements, and could not meet its financial obligations as they came due; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

76. On November 16, 2022, during after-market hours, Bioventus issued a press release entitled "Bioventus Files for Extension to File Form 10-Q for the Period Ended October 1, 2022", stating, in relevant part:

> As a result of the recent decline in the Company's market capitalization subsequent to [the Q3 Earnings Release], Bioventus requires additional time to complete a review in accordance with generally accepted accounting principles to assess whether a non-cash impairment charge is required for the third quarter of 2022. The preliminary review indicates an impairment charge in the range of $185 million to $205 million.

> In addition, Bioventus is seeking resolution related to the validity of a revised invoice received subsequent to the Company's Q3 Earnings Release. The invoice is for rebate claims from a large private payer in relation to our Pain Treatments vertical, which likely will adversely affect the Company's previously announced third quarter 2022 financial results. The recognition of additional rebates may impact Bioventus' recently announced revenue guidance . . . .

> As a result of the foregoing, the Company's management has concluded that its internal controls related to the timely recognition of quarterly rebates were inadequate specifically for the period ended October 1, 2022. In light of these factors and before consideration of any mitigation steps, the Company's

18

management is also evaluating whether the Company will be able to meet all of its financial obligations as they come due within one year after the date its financial statements for the period ended October 1, 2022, are issued.

77. That same day, Bioventus filed a notification on Form NT 10-Q with the SEC, regarding the Company's inability to timely file its quarterly report on Form 10-Q for its fiscal third quarter ended October 1, 2022, which reiterated the statements contained in the Company's November 16, 2022 press release.

78. Following these developments, Bioventus's stock price fell $1.00 per share, or 33.67%, to close at $1.97 per share on November 17, 2022.

79. Then, on November 21, 2022, during after-market hours, Bioventus issued a press release announcing revised third quarter 2022 results to account for "additional rebate claims related to certain of the Company's products and a non-cash impairment charge" that amounted to $189.2 million "due to the recent decline in our market capitalization subsequent to our previously announced financial results for the three and nine months ended October 1, 2022." Specifically, among other revised results, that press release reported "Net Sales of $128.7 million," a "Net Loss of $145.7 million," "Adjusted EBITDA* of $21.0 million," a "[l]oss per share of Class A common stock of $1.76," and "Non-GAAP earnings per share of Class A common stock* of $0.06[.]"

80. That same day, also during after-market hours, Bioventus belatedly filed its quarterly report on Form 10-Q with the SEC, advising of various changes to Bioventus's historical practices that were necessary to account for rebates, stating that these changes materially impacted the Company's evaluation of its ability to meet debt covenants, resulting in liquidity and going concern disclosures:

> The Company's internal control over financial reporting was not performed at a sufficient level of precision to ensure that the third quarter 2022 rebates accrual was complete and accurate. The process undertaken to estimate the expected reduction in revenue from rebates was consistent with the Company's historical practice.

19

However, subsequent to the initial calculation of the third quarter rebates accrual, an unexpectedly large invoice was received and there were not processes in place to ensure it was reviewed timely in order to update the accrual.

The Company reassessed open rebates accruals and the approach for calculating the rebate accruals based on this invoice. The Company revised its estimation methodology resulting in a decrease of revenue of $8.4 million. This adjustment was recorded subsequent to the earnings release but prior to the filing of this Quarterly Report on Form 10-Q. Further, this change in revenue projection related to the rebates accrual adjustment for 2022 and cascading effect on future revenue projections materially impacted the Company's evaluation of its ability to meet debt covenants, resulting in liquidity and going concern disclosures in the Company's Quarterly Report on Form 10-Q.

81.     Following these additional disclosures, Bioventus's stock price fell $0.07 per share, or 3.72%, to close at $1.81 per share on November 22, 2022, representing a total decline of 86.08% from the IPO price.

82.     As of the time this Complaint was filed, Bioventus's Class A common stock continues to trade below the $13.00 per share Offering price, damaging investors.

83.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Bioventus Class A common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Bioventus securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of

20

their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

85. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bioventus securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bioventus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

86. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

87. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

88. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Bioventus;

21

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Bioventus to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Bioventus securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

89. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

90. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Bioventus securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

22

- Plaintiff and members of the Class purchased, acquired and/or sold Bioventus securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

91. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

92. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)

93. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

94. This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

95. During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other

23

Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Bioventus securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Bioventus securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

96. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Bioventus securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Bioventus's finances and business prospects.

97. By virtue of their positions at Bioventus, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth. In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

98.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Bioventus, the Exchange Act Individual Defendants had knowledge of the details of Bioventus's internal affairs.

99.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Bioventus.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Bioventus's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Bioventus securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Bioventus's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Bioventus securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

100.    During the Class Period, Bioventus securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Bioventus securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have

25

purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Bioventus securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Bioventus securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

101. By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

102. As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)

103. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

104. During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Bioventus, and conducted and participated, directly and indirectly, in the conduct of Bioventus's business affairs. Because of their senior positions, they knew the adverse non-public information about Bioventus's misstatement of income and expenses and false financial statements.

26

105. As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Bioventus's financial condition and results of operations, and to correct promptly any public statements issued by Bioventus which had become materially false or misleading.

106. Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Bioventus disseminated in the marketplace during the Class Period concerning Bioventus's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Bioventus to engage in the wrongful acts complained of herein. The Exchange Act Individual Defendants, therefore, were "controlling persons" of Bioventus within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bioventus securities.

107. Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Bioventus. By reason of their senior management positions and/or being directors of Bioventus, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Bioventus to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of Bioventus and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

108. By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Bioventus.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

109.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

110.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

111.    The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

112.    Bioventus is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

113.    As issuer of the shares, Bioventus is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

114.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

115.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

116.    Plaintiff acquired Bioventus shares pursuant and/or traceable to the Offering Documents for the IPO.

117.    Plaintiff and the Class have sustained damages. The value of Bioventus securities has declined substantially subsequent to and because of Defendants' violations.

28

## COUNT IV

### (Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)

118.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

119.   This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

120.   The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Bioventus within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Bioventus to engage in the acts described herein.

121.   The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

122.   By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

29

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: January 12, 2023                    Respectfully submitted,

CRAIGE JENKINS LIIPFERT & WALKER LLP

*/s/* Ellis B. Drew
Ellis B. Drew, III
N.C. State Bar No. 12934; Fed. No. 603
BoD@craigejenkins.com
110 Oakwood Drive, Suite 300
Winston-Salem, NC 27103
Telephone: (336) 725-2900

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(*pro hac vice* application forthcoming)
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Attorneys for Plaintiff*

30

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _____Robert Ciarciello_____, make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 (the "Securities Act") and/or Section 21D(a)(2) of the

Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation

Reform Act of 1995.

2.    I have reviewed a Complaint against Bioventus Inc. ("Bioventus" or the "Company") and

authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Bioventus securities at the direction of plaintiffs' counsel or

in order to participate in any private action arising under the Securities Act or the Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Bioventus common stock pursuant and/or traceable to the Offering

Documents issued in connection with the IPO as specified in the Complaint, and/or Bioventus securities

during the Class Period as specified in the Complaint, including providing testimony at deposition and trial,

if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this

action.

5.    The attached sheet lists all of my transactions in Bioventus common stock pursuant and/or

traceable to the Offering Documents issued in connection with the IPO as specified in the Complaint, as

well as Bioventus securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have

not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the

class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs

and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: 0DB98511-CB17-4A05-92A2-B39D7C800A23

8.     I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


**Executed** _____12/9/2022_____
                    **(Date)**


                                          ┌─ DocuSign by:
                                          │  _____
                                          └─ 41ECBA0621E5418...
                          _____
                          **(Signature)**

                                          Robert Ciarciello
                          _____
                          **(Type or Print Name)**

**Bioventus Inc. (BVS)**                                                    **Robert Ciarciello**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 2/17/2022 | 1,676 | $12.0100 |
| Purchase | 4/4/2022 | 1,635 | $12.2800 |
| Purchase | 4/28/2022 | 2,022 | $12.2000 |
| Purchase | 5/5/2022 | 1,078 | $9.2600 |
| Sale | 3/25/2022 | (1,676) | $13.2000 |
| Sale | 4/5/2022 | (1,635) | $13.4500 |
| Sale | 11/9/2022 | (3,100) | $2.2500 |