IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROBERT CIARCIELLO, Individually and on Behalf of All Others Similarly Situated, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | 1:23-CV-32 |
| BIOVENTUS INC., KENNETH M. REALI, MARK L. SINGLETON, GREGORY O. ANGLUM, and SUSAN M. STALNECKER, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs allege that the defendants violated the Securities and Exchange Act of 1934 and the Securities Act of 1933 by making false and misleading statements in various SEC filings and earnings phone calls. The defendants seek to dismiss the plaintiffs' second amended complaint. The defendants' motion to dismiss the 1933 Securities Act claims will be granted because the lead plaintiff has not alleged facts to plausibly show statutory standing to assert these claims. The complaint otherwise alleges many factual details sufficient to plausibly allege with particularity misleading statements made with knowledge and causing loss, so the Exchange Act claims may proceed.

### I. Allegations in the Second Amended Complaint

The defendant, Bioventus, Inc., is a medical device and pharmaceutical company that sells drug therapies, including hyaluronic acid injections. Doc. 58 at ¶¶ 39–40. The

revenue from these sales is affected by contracts Bioventus has with third party payers, like health insurance companies. *Id.* at ¶ 41. These contracts require Bioventus to pay rebates to the third-party payers when an insured patient gets a Bioventus injection. *Id.*

Bioventus provides public certifications of net revenue in SEC filings. *See, e.g.*, *id.* at ¶¶ 108, 111. From early 2021 to late 2022, Bioventus stated that it deducts expected rebates, calculated based on historical data, buying trends, and other appropriate variables, from its recognized revenue. *See, e.g.*, *id.* at ¶¶ 78–79, 237. In those filings and other public declarations, the defendants also said that they follow generally accepted accounting principles and had designed a reasonable internal control system for financial reporting. *See, e.g.*, *id.* at ¶ 104.

After an unexpectedly large payout on a rebate claim in the summer of 2021, Bioventus conducted an internal audit of the processes and controls for estimating and managing rebates. *Id.* at ¶¶ 83–84. The audit was highly critical of the way Bioventus was calculating expected rebates and identified at least 12 action items as "red," meaning that issue was severe and required immediate attention and correction. *Id.* at ¶¶ 50–51, 85. Defendants Kenneth Reali, Gregory Anglum, and Susan Stalnecker received the report in late August or early September 2021. *Id.* at ¶ 96.

After the audit, Bioventus failed to make needed changes in the rebate estimation process, leading more than one employee who worked on the audit report to resign in early 2022. *Id.* at ¶ 100. The defendants continued to discuss their processes and controls positively in SEC filings and otherwise, *see, e.g.*, *id.* at ¶¶ 102–05, and to report revenue based on the inadequate estimation process. *Id.* at ¶ 107.

2

The defendant's revenue is also affected by reimbursement payments made to Bioventus by the Centers for Medicare and Medicaid Services. *Id.* at ¶ 121. Historically, Bioventus received payment from CMS based on its wholesale acquisition cost, which did not take into account rebates and discounts; this allowed Bioventus to receive larger reimbursements than if reimbursed based on average sales price. *Id.*

In 2020, Congress passed legislation requiring healthcare manufacturers seeking Medicare reimbursements to report average sales price instead of wholesale acquisition cost starting on January 1, 2022. *See id.* at ¶ 122. This shift meant Bioventus would receive significantly less in reimbursements from Medicare. *Id.* at ¶ 123.

The defendants repeatedly assured investors that Bioventus had planned for this change by, among other things, securing agreements with private payers for lower rebates. *Id.* at ¶ 129. The defendants also said Bioventus had run careful calculations showing that the shift in price reporting would have a "net-neutral" impact. *See, e.g.*, *id.* at ¶¶ 129, 132, 134.

After the price reporting shift took effect, the defendants repeatedly said that everything went exactly as expected and that the shift was consistent with the modeling. *Id.* at ¶ 139. But in fact, Bioventus had not carefully calculated the effect of the price shift, as it lacked basic information needed to model the impact of the pricing change. *See id.* at ¶ 130. And Bioventus had not obtained agreements from private payers for lower rebates. *Id.* at ¶ 133.

In November 2022, Bioventus filed its third quarter Form 8-K, reporting a lower than previously anticipated revenue. *Id.* at ¶ 147. Bioventus partially attributed this to a

3

Case 1:23-cv-00032-CCE-JEP    Document 75    Filed 11/06/23    Page 3 of 12

large rebate request from an insurer, which it characterized as "unexpected," *see id.* at ¶ 148, even though the defendants were aware of the likelihood of a large rebate request like this one because of the large rebate request and the audit report in 2021. *Id.* at ¶¶ 149–50. Bioventus also claimed that the legislatively required price reporting shift contributed to the revenue shortfall. *Id.* at ¶ 148. As a result of the third quarter filing, stock prices significantly declined. *See id.* at ¶ 153.

Other factual allegations will be discussed as needed in connection with specific arguments of the parties.

## II. Defendants' Motion to Dismiss

Plaintiffs filed this action, alleging that defendants violated §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934 (Exchange Act) and §§ 11 and 15 of the Securities Act of 1933 (Securities Act).[1] Doc. 58. Defendants responded with their motion to dismiss for failure to state a claim. Doc. 63.

### a. Does the Second Amended Complaint state claims under § 10(b) and § 11?

Defendants challenge the plaintiffs' second amended complaint on the grounds that the statements were not false or misleading, the plaintiffs did not allege facts showing that the defendants acted with the requisite scienter, and the plaintiffs did not suffer a loss attributable to the statements. *See generally*, Doc. 64. These challenges

---

[1] Specifically, plaintiffs allege that all named defendants violated the Exchange Act and all the defendants other than Mark Singleton violated the Securities Act. Doc. 58 at ¶¶ 38, 212–27, 339–44. Mr. Singleton was not employed at Bioventus at the time of the alleged Securities Act violations. *Id.* at ¶ 35.

4

raise factual disputes more appropriate for later in the proceedings, ignore the substance of the complaint, and rely on conclusory assertions that are little more than opinions of counsel.

The plaintiffs set forth extensive facts to support the following: (1) Bioventus never designed or implemented a documented or consistent process for estimating rebates and changed the estimated inputs for rebate calculation without any data or legitimate reason, *see, e.g.*, Doc. 58 at ¶ 187(b); (2) the defendants knew that their rebate calculation methods were inadequate because of the large rebate request in 2021 and the audit report, *see, e.g.*, *id.* at ¶¶ 95–96; (3) the defendants did not take serious steps to create a process for estimating rebates that went beyond guessing, *see, e.g.*, *id.* at ¶ 66; and (4) the defendants continued to assert that they had adjusted net revenue projections based on a careful evaluation of data, including "historical experiences" and "known market events and trends" when they had not. *See, e.g.*, *id.* at ¶¶ 236–37. These facts, summarized *supra* but alleged in detail in the operative complaint, allow the inference that the defendants' representations about revenue and the effect of the Medicare price change were false and misleading and that the defendants acted with the requisite degree of scienter. The defendants' arguments are largely based on their own factual assertions, which are inconsistent with the allegations, or on competing inferences that conflict with the reasonable inferences one can draw from the complaint.

The defendants also assert that the plaintiffs did not adequately allege loss causation. Doc. 64 at 39–41. To the extent this argument is based on factual arguments that conflict with the allegations of the complaint, it is without merit. And the

5

defendants' argument that they adequately disclosed the risk of inaccurate rebate estimates is also inconsistent with the well-pleaded, specific factual allegations in the complaint.

To the extent that the defendants say loss causation is not shown because the lead plaintiff sold all its shares before the November 19, 2022, and March 31, 2023, filings were made, *id.* at 41, the Court does not understand the argument. The Court's review of the complaint does not show any allegation that statements made in those filings were misrepresentations; indeed, the complaint alleges that these statements show the inaccuracy of the earlier revenue projections. *See, e.g.*, Doc. 58 at ¶ 174. The complaint specifically identifies all misrepresentations, and none assert that statements made in those two filings were misrepresentations. *See id.* ¶¶ 201–03 (Securities Act statements), ¶¶ 230, 233–58 (Exchange Act statements).

### b. Does the lead plaintiff have standing to bring the § 11 claim?

The defendants contend that the lead plaintiff, Wayne County Employees' Retirement System (WCERS), does not have standing to bring a § 11 Securities Act claim because it has not adequately alleged that its stock is traceable to the registration statement at issue. Doc. 64 at 42–43. WCERS asserts that it is not required to do more than generally allege that the stock it purchased can be traced back to the registration statement. Doc. 70 at 40.

Section 11 of the Securities Act gives any person who acquires a security issued under a registration statement that contains an untrue material fact or omission the right

6

to sue. *See* 15 U.S.C. § 77k(a). Thus, statutory standing is limited to those who purchased shares that were the direct subject of the registration statement that contained the actionable statement or omission. *See In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 755–56 (1st Cir. 2016); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005); *In re 2U, Inc. Sec. Class Action*, No. 19-CV-3455, 2021 WL 3418841, at *25 (D. Md. Aug. 5, 2021); *TransEnterix Inv. Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740, 760 (E.D.N.C. 2017). As the court held in a case on which the plaintiffs rely, "[s]tocks are not fungible under section 11." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003).

When a company has only had one stock offering, then "alleging simply that the plaintiffs' shares are traceable to the offering suffices." *TransEnterix*, 272 F. Supp. 3d at 761. But if there have been multiple stock offerings, the plaintiffs must allege facts to plausibly show that the shares they own were issued under the allegedly false or misleading registration statement. *See In re 2U Inc.*, 2021 WL 3418841, at *25 (holding that when plaintiff does not allege he bought shares directly in the relevant offering, plaintiff must allege sufficient facts to show his shares are traceable back to that offering, and collecting cases).[2]

---

[2] The Fourth Circuit has not decided a case addressing statutory standing under § 11, but it has assessed such standing for a § 12(a) claim. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 898–901 (4th Cir. 2014). In *Yates*, the Fourth Circuit found that a plaintiff must do more than allege it purchased securities pursuant or traceable to a public offering and must offer "sufficient supporting facts" to establish standing. *See Yates*, 744 F.3d at 900.

7

Here, WCERS alleges that it made multiple Bioventus stock purchases in April 2022, *see* Doc. 58 at 172, and that those securities were issued under the February 2021 registration statement. *Id.* at ¶¶ 76, 218. It does not allege that it bought shares directly in the relevant offering, or that this was the only stock offering by Bioventus; nor does it allege any other specific facts tending to show that the shares it purchased in April 2022 were shares issued under the February 2021 registration statement. This is insufficient to plausibly allege statutory standing. *See TransEnterix*, 272 F. Supp. 3d at 761; *In re 2U Inc.*, 2021 WL 3418841, at *25.[3]

To support its argument, WCERS relies on two district court decisions from the Southern District of New York. Doc. 70 at 40. The *In re Global Crossing* court dismissed the Section 11 claim for lack of standing because the plaintiffs did not make any allegations of traceability. *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. at 208. In *In re Wachovia*, the defendants supplied "no binding authority for the proposition that anything more [than general traceability] is required," and in the absence of such support, the court allowed the claim to proceed based on general allegations. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011). Since those cases were decided, there have been at least two circuit court decisions, *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d at 755–56; *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at

---

[3] It appears to be undisputed that between February 2021 and April 2022, Bioventus had four other stock offerings. Doc. 64 at 43. Bioventus provides SEC filings in support. *See* Doc. 67-3 (Form 10-K stating that "[a]s of March 4, 2022, there were 60,601,858 shares of Class A common stock outstanding."); Doc. 67-16 (September 2021 Form S-4 registering additional shares for public offering).

1107–08, and at least two in-circuit, district court decisions, *TransEnterix*, 272 F. Supp. 3d at 761; *In re 2U Inc.*, 2021 WL 3418841, at *25, which persuasively explain why more specific allegations are required. WCERS does not mention these cases, much less offer a reason they should not be followed.

Because the lead plaintiff has alleged only that it purchased stock "traceable to the Registration Statement," *see, e.g.*, Doc. 58 at ¶ 218, but has not offered any factual support for this general and conclusory allegation, the defendant's motion to dismiss the § 11 Securities Act violations will be granted. The § 15 claim, which establishes controlling person liability for a § 11 violation, will also be dismissed. *See Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 n.7 (4th Cir. 2004) (holding that when a § 11 claim is dismissed, the § 15 claim that rests on the alleged § 11 violation must be dismissed as well). If the plaintiffs have sufficient facts, they may promptly file a motion to amend in compliance with the Local Rules. *See TransEnterix*, 272 F. Supp. 3d at 762; LR 15.1.

### III. Plaintiffs' Motion to Strike and Defendant's Motion for Consideration of Attached Documents

In support of their motion to dismiss, the defendants offer discrete pages from their SEC filings, transcripts from earnings calls and presentations, and a paper writing they say is the audit report referenced by the plaintiffs in the complaint. *See* Doc. 66 at 1–3. They ask the Court to consider these documents in deciding the motion to dismiss, contending the documents are incorporated into the complaint and are subject to judicial notice. *Id.* at 8–9. The plaintiffs move to strike the purported audit report. Doc. 68.

9

They object to consideration of the other materials only to the extent they are offered to prove the truth of the matters asserted. Doc. 69 at 13.

Courts usually do not consider extrinsic documents when ruling on a motion to dismiss. *See Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). But courts can consider documents submitted by the defendant in support of a motion to dismiss without converting the motion to one for summary judgment "when the document is integral to and explicitly relied on in the complaint and when the plaintiffs did not challenge the document's authenticity." *Id.* at 606–07 (cleaned up).

Here, the plaintiffs dispute the authenticity of the document proffered by the defendant and do not concede that it is the audit report discussed in the complaint.[4] *See* Doc. 69 at 8–9. Its contents also do not match up to the detailed factual allegations in the complaint.[5] The Court has not considered this exhibit in evaluating the motion to dismiss. *See Zak*, 780 F.3d at 606–07; *Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 537 (M.D.N.C. 2013).

The plaintiffs do not challenge the authenticity of the other documents proffered by the defendants. *See* Doc. 69 at 13. Rather, the plaintiffs state that the Court cannot consider these documents for the truth of the matters asserted. *Id.*

---

[4] The Court assumes the plaintiffs have a good faith basis for denying the document's authenticity and denying that it is the document referenced in the operative complaint. *See Six v. Generations Fed. Credit Union*, 891 F.3d 508, 514, 517–18 (4th Cir. 2018).

[5] The defendants did not authenticate the proffered document with anything other than an affidavit from counsel, who does not explain why she has personal knowledge that the attached audit report is what it purports to be or how she knows that there is no "red" audit report. Doc. 67 at ¶¶ 1, 8.

10

Courts have taken judicial notice of public documents, like SEC filings, *see, e.g.*, *Yates*, 744 F.3d at 881, and "routinely take judicial notice of publicly available documents that discuss the subject of the case." *Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d. 530, 550 (M.D.N.C. 2018). If a document's meaning or content is disputed, "the court can consider the fact of [its] publication . . . but not the truth or falsity of [its] contents." *See id.* (citing *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018)).

Many of the plaintiffs' allegations are directly in conflict with statements made by the defendants in these exhibits. The defendants have also made arguments about adequacy of cautionary statements that are more appropriately evaluated later in the litigation. *See Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 670 (D.S.C. 2016) (ignoring defendant's "attempt … to assert its own version of events" at the motion to dismiss stage); *Ollila v. Babcock & Wilson Enters., Inc.*, No. 17-CV-109, 2018 WL 792069, at *5 (W.D.N.C. Feb. 8, 2018) (declining to evaluate adequacy of cautionary language and characterizations of puffery in securities fraud case at the motion to dismiss stage). The Court has considered the documents to show that they were filed and that the statements were made, but not for the truth of the statements made therein. *See Zak*, 780 F.3d. at 606–08; *Hirtenstein*, 348 F. Supp. 3d at 550.

It is **ORDERED** that:

1. The defendants' motion to dismiss the second amended complaint, Doc. 63, is **GRANTED** as to the plaintiffs' first and second causes of action, Doc. 58 at ¶¶ 212–20, violation of § 11 of the Securities Act, and Doc. 58 at ¶¶ 221–27,

violation of § 15 of the Securities Act, for inadequate allegations of statutory standing.

2. The defendants' motion to dismiss the second amended complaint, Doc. 63, is otherwise **DENIED**, and the plaintiffs Exchange Act claims under § 10(b) and § 20(a) may proceed.

3. The defendants' motion for consideration, Doc. 65, is **DENIED** as to the proffered audit report, Doc. 67-7, and is otherwise **GRANTED** for the limited purposes stated herein.

4. The plaintiff's motion to strike, Doc. 68, is **DENIED** as unnecessary. The Court has not considered the proffered audit report, Doc. 67-7, and has considered the other materials only to the limited extent stated herein.

This the 6th day of November, 2023.

_____
UNITED STATES DISTRICT JUDGE