IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT CIARCIELLO Individually )
and on Behalf of All Others Similarly )
Situated, )
                                     )
                Plaintiff, )
                                      )
         v. )                 1:23-CV-32
                                      )
BIOVENTUS INC., KENNETH M. )
REALI, MARK SINGLETON, )
GREGORY ANGLUM, and SUSAN )
STALNECKER, )
                                      )
            Defendants. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

This is a securities class action involving allegations that the defendants made false or misleading statements about securities offered by Bioventus, Inc. In August 2024, the Court preliminarily approved a proposed settlement agreement, ordered settlement notices to be sent to the putative class members, and set a date for a final settlement fairness hearing. The plaintiffs have now moved for final approval of the settlement terms under Federal Rule of Civil Procedure 23, approval of the plan of allocation, and for attorneys' fees and other disbursements.

The final settlement hearing was held on December 13, 2024. In light of its experience, the Court has considered the record, including, *inter alia*, the lack of objections by any class members, the proposed settlement agreement, the supporting documents, and the statements of counsel during the final settlement hearing and

previous hearings. The Court finds that the proposed settlement meets the requirements of Rule 23 and that the plan of allocation and requested attorneys' fees and other disbursements are fair and reasonable.

## I. Background

Bioventus is a medical device and pharmaceutical company. *See* Doc. 58 at ¶¶ 2, 39–40; Doc. 81 at ¶¶ 2, 39–40. In February 2021, it issued 9.2 million shares of Class A common stock in its initial public offering. Doc. 58 at ¶ 77; Doc. 81 at ¶ 77.

Between February 2021 and November 2022, the defendants made statements in SEC filings and other public disclosures about Bioventus' projected revenue, financial performance, revenue recognition, and internal controls. *See, e.g.*, Doc. 58 at ¶¶ 76, 78– 79, 103; Doc. 81 at ¶¶ 76, 78–79, 103. After multiple allegedly corrective disclosures in November 2022, Bioventus' stock price declined significantly. Doc. 58 at ¶¶ 23–26.

In January 2023, Robert Ciarciello, a former Bioventus shareholder, *see* Doc. 1 at 33, filed a class action complaint against Bioventus and the named company executives, alleging Defendants made false and misleading statements that caused Bioventus' stock price to be overinflated.[1] *See generally id.* According to the plaintiff, the overinflation and the drop in stock price that followed the corrective disclosures caused shareholders to suffer financial injury. *See id.* at ¶¶ 40–83.

---

[1] The defendants Kenneth Reali, Mark Singleton, Gregory Anglum, and Susan Stalnecker hold or held various leadership positions at Bioventus during the relevant period. *See* Doc. 58 at ¶¶ 34–37; Doc. 81 at ¶¶ 34–37. This order collectively refers to Bioventus and the named defendants as Defendants; the parties do the same in their amended Stipulation of Settlement. *See* Doc. 148-1 at ¶ 1.4.

Other shareholders expressed interest in serving as lead plaintiff under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]  Doc. 7; Doc. 11; Doc. 16; Doc. 19.  In April 2023, the Court appointed Wayne County Employees' Retirement System ("Wayne") as lead plaintiff and Bleichmar Fonti & Auld LLP in association with Tin Fulton Walker & Owen PLLC as lead counsel. Doc. 44.

Wayne filed an amended complaint in July 2023, asserting two violations of the Securities Act and two violations of the Exchange Act.  Doc. 58.  In general, Wayne contended that Defendants were aware they were using faulty assumptions to calculate rebates Bioventus was likely to owe in the future, Defendants knew that Bioventus' financial projections were based on untrustworthy numbers, Defendants failed to improve the rebate estimation process, and Defendants continued to report revenue based on the inadequate estimation process.  *See* Doc. 75 at 1–4 (summarizing allegations in operative complaint).

The Court dismissed the Securities Act claims in November 2023 on Rule 12(b)(6) grounds but allowed the Exchange Act claims to proceed.  *Id.* at 11–12.  In those two remaining claims, Wayne alleges Defendants violated § 10(b) of the Exchange Act, as implemented by SEC Rule 10b-5, and § 20(a) of the Exchange Act.  Doc. 58 at ¶¶ 339–344; *see also* Doc. 75 at 12.

---

[2] *See* 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i).

In March 2024, Wayne asked the Court to certify the proposed class and to appoint Wayne as class representative, Bleichmar as class counsel, and Tin Fulton as local class counsel. Doc. 89. Defendants opposed class certification. Doc. 111.

While that motion was pending, the parties met with mediator Jed Melnick and reached a conditional settlement agreement. Doc. 136. On July 15, 2024, Wayne filed an unopposed motion for preliminary approval of class action settlement, Doc. 137, a signed Stipulation of Settlement, Doc. 137-1, and copies of the proposed notices and claim form. Docs. 137-3, 137-4, 137-5, 137-6. For purposes of settlement only, the parties stipulated and agreed to (a) the certification of the litigation as a class action on behalf of the settlement class; (b) the certification of the plaintiff as class representative; and (c) appointment of lead counsel as class counsel. Doc. 137-1 at ¶ 9.3.

On August 7, 2024, the Court held a hearing on preliminary approval of the settlement. Minute Entry 08/07/2024. In response to some of the Court's questions, the parties filed amended versions of the Stipulation of Settlement, Doc. 148-1, the long-form notice, Doc. 148-2, and the claim form. Doc. 148-3. On August 13, 2024, the Court granted preliminary approval of the amended Stipulation, Doc. 150 at ¶ 1; preliminarily certified the class, Wayne as class representative, and Wayne's counsel as class counsel, *id.* at ¶ 5; approved the proposed notices and claim form, *id.* at ¶ 7; appointed A.B. Data Ltd. as Claims Administrator, *id.* at ¶ 8; and set a final settlement hearing. *Id.* at ¶ 4.

On November 8, 2024, Wayne filed an unopposed motion for final approval of the class action settlement as set forth in Doc. 148-1 and the plan of allocation as set forth in

Doc. 148-2 at 29–37, Doc. 163, and a motion for attorneys' fees, expenses, and a service award. Doc. 165. Wayne also filed supporting briefs, Docs. 164, 166, and a declaration by Wayne's counsel with exhibits. Doc. 167. These filings included a declaration by a project manager at A.B. Data Ltd. attesting to its compliance with the notice plan approved by the Court and stating the number of opt-outs, objections, and claims submitted to date. Doc. 167-5. On December 6, 2024, Wayne filed a supplemental brief and declaration stating the updated number of opt-outs, objections, and claims submitted to date. Docs. 168, 169.

The Court held a final settlement hearing on December 13, 2024. Minute Entry 12/13/2024. Wayne's counsel confirmed that no objections had been filed, reviewed the status of the claims process, and summarized the reasons the motions should be granted. The defendants were present through counsel and did not object to either motion.

## II.    Certification of Settlement Classes

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, the plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up). District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but they have "wide discretion" in evaluating whether the Rule 23 requirements have been met. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

5

## A.  Threshold Requirements

As a threshold matter, Rule 23 requires the proposed class members to be readily identifiable and the proposed class representative to be a member of the proposed class. *See Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021) (cleaned up) (recognizing an "implicit threshold requirement" that class members be "readily identifiable"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("A class representative must be part of the class." (cleaned up)); *see also* Fed. R. Civ. P. 23(a).  In securities cases, courts and litigants can often "readily identify putative class members by reference to 'objective data about who bought and sold . . . stock during the class period.'"  *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 299 (D. Md. 2022) (quoting *In re Jeld-wen Holding, Inc. Sec. Litig.*, No. 20-CV-112, 2021 WL 1186326, at *9 (E.D. Va. Mar. 29, 2021)).

Here, the proposed class members are readily ascertainable; Defendants' securities transfer agent gave Defendants a list of all individuals who purchased or acquired stock during the class period, and Defendants gave the Claims Administrator this list in electronic form.  Doc. 148-1 at ¶ 5.2; Doc. 141 at 8.  Wayne is also a member of the proposed class.  *See* Doc. 21-1 at 4.  The threshold requirements are met.

## B.  Rule 23(a)

Plaintiffs seeking class certification must meet the four requirements of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  *Peters*, 2 F.4th at 241.  "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (cleaned up).

### 1.  Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action, . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up).

Between 11 million and 28 million shares of Bioventus stock were publicly traded during the proposed class period, and the average weekly trading volume was 1.18 million shares. Doc. 99-1 at ¶ 27. "Given this trading volume, common sense dictates that the proposed class is surely sufficiently large to make joinder impracticable." *In re Under Armour*, 631 F. Supp. 3d at 300 (cleaned up and collecting cases); *see also In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104–05 (E.D. Va. 2009) (stating numerosity "is seldom disputed in securities fraud cases"). The numerosity requirement is met.

### 2.  Commonality and Typicality

Often, the commonality and typicality requirements "merge analytically." *In re Mills Corp.*, 257 F.R.D. at 105. Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, "the plaintiff [must] demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up). "Even a single common question will do," *id.* at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (cleaned up); *see also Carolina Youth*

7

*Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) ("Commonality requires [that] an entire set of claims depend upon a common contention that is capable of class wide resolution." (cleaned up)).

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). This requirement "goes to the heart of a representative parties' ability to represent a class," and the named plaintiff's interest in prosecuting its case "must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). But the claims of the class representative and the claims of the class need not "be perfectly identical or perfectly aligned." *Id.* at 467.

Here, there are questions of law and fact common to all Settlement Class Members, and Wayne's claims are typical of the class. The class members, including Wayne, all bought Bioventus shares allegedly in reliance on the integrity of the market and Defendants' allegedly false public statements. Doc. 58 at ¶¶ 338, 342; *see also* Doc. 21-1 at 4 (showing Wayne bought shares in the class period). And they all lost money when Defendants finally revealed the truth. *See, e.g.*, Doc. 58 at ¶ 146. Liability turns on the same questions for all class members, including, for example:

-- whether the identified omissions were material;

8

--     whether the identified statements by the Defendants were untrue and

material;

--     whether in making the identified statements or in omitting the identified

information, Defendants acted with scienter;

--     whether the price of Bioventus Class A common stock was artificially

inflated;

--     whether reliance may be presumed;[3] and

--     whether class members suffered damages.

*See id.* at ¶¶ 340–342; *see also In re Under Armour*, 631 F. Supp. 3d at 301 (discussing

similar securities fraud class action questions and certifying class).

Although Wayne sold the last of its Bioventus stock on November 18, 2022, Doc.

21-1 at 4, three days before the end of the proposed class period, *see* Doc. 148-1 at

¶ 1.29, it held many Bioventus shares through the first two alleged corrective disclosures.

*See* Doc. 58 at ¶¶ 319–326 (alleging corrective disclosures on November 8, 2022, and

November 16, 2022). Wayne is not required to hold stock throughout the entire class

period to assert an injury typical of the class. *See In re Virtus Inv. Partners, Inc. Sec.

Litig.*, No. 15-CV-1249, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017). The

commonality and typicality requirements are met.

---

[3] In securities fraud litigation, a fraud on the market theory can be used to presume reliance.
*Basic Inc. v. Levinson*, 485 U.S. 224, 246–47 (1988). Under this theory, courts can presume that
investors rely on public material misrepresentations when they buy or sell stock "[b]ecause most
publicly available information is reflected in market price." *Id.* at 247. The defendants can then
rebut this presumption with contrary evidence about the plaintiff's reliance. *Id.* at 248.

### 3. Adequacy of Representation

Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," as well as to assess the "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 625, 626 n.20; *see also Wal-Mart*, 564 U.S. at 349 n.5; *Carolina Youth*, 60 F.4th at 780. There are two components to the adequacy requirement: "(1) the interests of the proposed class representatives and class members must coincide; and (2) the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation." *In re Under Armour*, 631 F. Supp. 3d at 308.

Wayne's interests and the interests of the other Settlement Class Members coincide, and Wayne is an adequate lead plaintiff. It is a large institutional investor, Doc. 91 at ¶ 2, and it has served as lead plaintiff and recovered damages in four other securities class actions.[4] In this case, it had a significant loss of over $600,000 on its Bioventus stock investments, Doc. 21-3; *see* Doc. 58 at 172, so it is motivated to obtain a good result. *See* Doc. 91 at ¶¶ 6–9 (discussing Wayne's commitment to the litigation and desire to obtain a favorable result up to the class certification stage).

---

[4] *See Chun v. Fluor Corp.*, No. 18-CV-1338, Doc. 171 (N.D. Tex. Nov. 8, 2022) (order approving $33 million settlement); *In re Uniti Grp. Inc. Sec. Litig.*, No. 19-CV-756, Doc. 144 (E.D. Ark. Nov. 7, 2022) (order approving $38.875 million settlement); *In re Willbros Grp., Inc. Sec. Litig.*, No. 14-CV-3084, Doc. 138 (S.D. Tex. Aug. 2, 2018) (order approving $10 million settlement); *In re Cooper Co. Sec. Litig.*, No. 6-CV-169, Doc. 416 (C.D. Cal. Dec. 13, 2010) (order approving $27 million settlement).

Wayne understands that it has served and continues to serve as a fiduciary for the benefit of the class and that it must provide fair and adequate representation to all class members. *Id.* at ¶ 6. It has been actively involved in the litigation process. *See id.* at ¶ 7; Doc. 142 at ¶¶ 5, 7; Doc. 167-1 at ¶ 4. As lead plaintiff, Wayne has been in regular contact with Lead Counsel, reviewed major motions and pleadings, responded to discovery requests, and prepared for and participated in depositions and the full day mediation session. Doc. 142 at ¶¶ 5, 7–8; Doc. 167-1 at ¶¶ 4, 6. There are no real or apparent conflicts of interest between class members, and, as discussed *infra*, Wayne has obtained a good result for all the class members.

Attorneys from Bleichmar have represented Wayne and the settlement class with assistance from local counsel at Tin Fulton. Bleichmar attorneys are recognized nationally in the field of securities litigation, and the firm has recovered almost $2 billion for investors in other cases. Doc. 167-4 at 3. The Bleichmar attorneys who have entered appearances in this matter have worked on a number of securities class actions, and their combined experience in complex litigation is substantial. *See id.* at 27–28 (Javier Bleichmar), 28–30 (Joseph Fonti), 33–34 (Nancy Kulesa), 37 (Evan Kubota), 38–39 (Ross Shikowitz), 39 (George Bauer), 39–40 (Benjamin Burry), 45 (Thayne Stoddard). They have pursued the interests of the class zealously; among other ways, this is shown by their actions when one of the defendant's insurers failed to pay settlement funds on time. *See, e.g.*, Docs. 153, 156, 157, 161.

Attorneys at Tin Fulton have extensive experience in complex litigation. Doc. 167-8 at 7. Attorney Gagan Gupta, the Tin Fulton attorney of record in this matter, has

served as class counsel in an MDL and in a large insurance coverage case. *Id.* at 8; *see id.* at p. 3 ¶ 3.

Wayne has advocated for the interests of the class and served as an adequate lead plaintiff. And Bleichmar and Tin Fulton have provided adequate legal representation. The requirements of Rule 23(a)(4) are met.

### C. Rule 23(b)

A plaintiff pursuing a class action must also establish that the case fits into at least one of the three subsections of Rule 23(b). *Comcast Corp.*, 569 U.S. at 33. The plaintiffs here rely on Rule 23(b)(3), Doc. 164 at 20, a "common vehicle" used to "seek damages for widespread wrongful conduct." *Krakauer*, 925 F.3d at 655. Under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[5]

Here, common questions predominate. Each settlement class member's claims stem from the same alleged acts and omissions by Defendants, and the class members

---

[5] Courts look to the elements of the cause of action to decide if common questions of law or fact predominate. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). For a claim under § 10(b) and SEC Rule 10b-5, a plaintiff must show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Singer v. Reali*, 883 F.3d 425, 438 (4th Cir. 2018) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

assert the same type of injury based on the same alleged wrongful conduct. *See In re Mills Corp.*, 257 F.R.D. at 109; *In re Under Armour*, 631 F. Supp. 3d at 311.

A class action is also superior to individual litigation. The superiority requirement is often easily met in securities cases. "[T]he alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Deluca v. Instadose Pharma Corp.*, No. 21-CV-675, 2023 WL 5489032, at *9 (E.D. Va. Aug. 24, 2023) (cleaned up); *see also In re Under Armour*, 631 F. Supp. 3d at 313. Here, the settlement class members are geographically dispersed, and their individual damages are not likely to be large. *See, e.g.*, *In re Under Armour*, 631 F. Supp. 3d at 313 (finding class action superior where "potentially thousands" of people "who may be geographically dispersed" bought "millions of Under Armour common stock"). It would be impractical for each class member to pursue his or her claim individually, and individual litigation could result in multiple, inconsistent adjudications. *See Deluca*, 2023 WL 5489032, at *9.

The plaintiff has met the requirements of Rule 23(b)(3). For purposes of this settlement, the Court will certify the class as defined in the amended Stipulation, Doc. 148-1 at ¶ 1.29, certify Wayne as class representative, and appoint Wayne's counsel as class counsel.

### III.   Approval of Final Settlement

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the

13

"strong judicial policy in favor of settlements, particularly in the class action context");

*accord Reed v. Big Water Resort, LLC*, No. 14-CV-1583, 2016 WL 7438449, at *5

(D.S.C. May 26, 2016); 4 William B. Rubenstein, *Newberg & Rubenstein on Class*

*Actions* § 13:44 n.1 (6th ed. 2022) (collecting cases).

A court can only approve a class action settlement "after a hearing" and only if the

settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts in this

circuit "bifurcate[] the analysis into consideration of fairness, which focuses on whether

the proposed settlement was negotiated at arm's length, and adequacy, which focuses on

whether the consideration provided the class members is sufficient." *Beaulieu v. EQ*

*Indus. Servs., Inc.*, No. 6-CV-400, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009)

(citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)); *accord Roldan*

*v. Bland Landscaping Co.*, No. 20-CV-276, 2022 WL 17824035, at *2 (W.D.N.C. Dec.

19, 2022).

### A. Fairness

The fairness analysis aims "to ensure that a settlement is reached as a result of

good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d

600, 614 (4th Cir. 2015) (cleaned up). Courts apply a four-factor test to determine the

fairness of a proposed settlement: "(1) the posture of the case at the time settlement was

proposed, (2) the extent of discovery that had been conducted, (3) the circumstances

surrounding the negotiations, and (4) the experience of counsel in the area of" law at

issue. *In re Jiffy Lube*, 927 F.2d at 158–59; *accord 1988 Tr.*, 28 F.4th at 525.

Here, all four fairness factors support final approval. As discussed in more detail *infra*, motions practice fairly apprised the parties of the strength of claims and defenses, the parties had engaged in significant discovery and negotiated with the assistance of a neutral mediator, and counsel are experienced.

The posture of the case is such that settlement is appropriate. The original complaint in this case was filed in January 2023. Doc. 1. After the Court appointed Wayne as lead plaintiff, Doc. 44, Wayne filed the operative complaint on July 31, 2023. Doc. 58. Defendants filed a motion to dismiss and attached documents outside the record, giving a good preview of some of their defenses. *See* Doc. 75 at 9–11 (court discussion of these submissions). The Court granted the motion to dismiss in part, and two of Wayne's four claims survived. *Id.* at 11–12. By the time the parties reached settlement, both had fully briefed Wayne's motion for class certification. Doc. 89. The case had moved well beyond initial pleadings.

The extent of discovery and the circumstances surrounding negotiations also support a finding that the settlement is fair. Discovery began in December 2023. *See* Docs. 78, 80. Wayne received and analyzed over 70,000 documents in discovery consisting of over 665,000 pages. Doc. 167 at ¶¶ 28–29. And Wayne responded to 38 document requests, producing over 5,300 pages of documents and 29 interrogatories. *Id.* at ¶¶ 31–32. Expert witnesses were identified and deposed, *see* Doc. 78 at ¶ 2(c)(iii); Doc. 92-1; Doc. 112 at ¶ 15; Doc. 124 at ¶ 10, and other depositions were taken. *See, e.g.*, Doc. 112 at ¶ 3; Doc. 124 at ¶ 9, 11. At the preliminary approval hearing, the parties confirmed that discovery had progressed to the point that both parties understood the

15

merits of their respective positions, even though they disagreed as to whether or how strongly certain documents supported the allegations in the complaint.

On May 29, 2024, the parties engaged in negotiations with an independent mediator. Doc. 136; *see* Doc. 167-7. The mediator testifies that the mediation was a full day affair during which the parties exchanged multiple demands and counteroffers. Doc. 167-7 at ¶¶ 5–6, 9. Eventually, they worked out a full settlement. *Id.* at ¶ 7.

The experience of counsel also supports a finding of fairness. As discussed *supra*, the attorneys at Bleichmar have substantial experience in securities litigation, Doc. 167-4 at 3, and local counsel is the principal class action attorney at Tin Fulton. Doc. 167-8 at 7. The defendants are represented by attorneys from Latham & Watkins, a well-respected law firm. The Court finds that the final settlement is fair.

### B. Adequacy

Courts assess the adequacy of a settlement through the following factors:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re Jiffy Lube*, 927 F.2d at 159; *accord 1988 Tr.*, 28 F.4th at 526. Courts examine "the amount of the settlement" and ensure the amount offered "is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Tr.*, 28 F.4th at 527.

The amount of the settlement is adequate and reasonable given the relative strength of the plaintiffs' case. Plaintiff's Counsel says that the Settlement Amount of

$15.25 million "represents a recovery of over 10.8% of the maximum estimated damages" and 27% of the likely damages. Doc. 164 at 14. It appears that the recovery is more than double the average recovery in § 10(b) cases litigated over approximately the last 10 years. *Id.* (citing Laarni T. Bulan & Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements – 2023 Review and Analysis* (2024), https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf).

After the motion to dismiss, only the plaintiff's Exchange Act Claims survived. Doc. 75 at 11–12. Defendants challenged class certification on multiple grounds. *See* Doc. 11. While class certification was likely—the Court had a draft in process to that end when the case settled—Wayne would likely face more opposition from Defendants at trial, as Defendants deny that they made any false statements. *See, e.g.*, Doc. 58 at ¶ 340; Doc. 81 at ¶ 340.

The duration of continued litigation supports the adequacy of the settlement. Defendants contested class certification. Doc. 111. And the parties have sought assistance from the Court on discovery disputes, Doc. 113, and requested modifications to scheduling deadlines. *See, e.g.*, Doc. 97. Continued litigation will be costly to both parties if a settlement is not approved.

Perhaps most important in the fairness evaluation, Bioventus' financial situation and resources available to pay damages are limited and questionable. Defendants' insurers will pay $6.5 million of the Settlement Amount, and Defendants will pay the remaining $8.75 million. Doc. 141 at 7. Bioventus has diminishing cash reserves, and its

17

portion of the Settlement Amount is approximately 35% of the company's available cash as of March 30, 2024. *Id.* at 8; *see* Doc. 164 at 16. There is also a limited pool of insurance coverage available, as policy limits are $15 million. Doc. 141 at 7. The defendants and their insurers also face several derivative lawsuits, for which this is the only insurance coverage. *Id.* at 7–8. Bioventus' financial position makes the prospect of any cash recovery meaningfully larger than the proposed Settlement risky at best.

The motion for preliminary approval of class action settlement was unopposed, Doc. 137, as was the motion for final approval, Doc. 163, and the amended Stipulation of Settlement was signed by representatives of both parties. Doc. 148-1 at 51. As discussed *infra*, class members have had notice of the settlement, and many have viewed the settlement website or called the toll-free helpline set up by the Claims Administrator. The website has had 2,063 unique visitors, Doc. 169 at ¶ 9, and the helpline has received 112 calls. *Id.* at ¶ 10. As of December 5, 2024, there were 16,982 claim submissions and no objections or opt-outs. *Id.* at ¶ 4.[6]

The Court finds that the final settlement as set forth in the amended Stipulation of Settlement, Doc. 148-1, is fair, adequate, and reasonable.

## IV.    Sufficiency of Notice

"In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and

---

[6] Wayne's counsel advised the Court at the final settlement hearing that as of close of business on December 12, 2024, over 17,000 claims have already been submitted and that there were no objections or opt-outs.

withdraw from the class." *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (cleaned up). For classes certified under Rule 23(b)(3), class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The court-approved notice process was reasonable and provided the class members with the best notice practicable under the circumstances. The Claims Administrator sent postcard notice via first-class mail to record holders of Bioventus stock and the most common third-party nominees listed in its proprietary database. Doc. 167-5 at ¶¶ 6–9. The postcard notice directed the recipients to either send the notice to those for whom the recipient had purchased Bioventus stock or send their contact information to the Claims Administrator. *Id.* at ¶ 13. The Claims Administrator then sent the notice to those stockholders of whom it was informed. *Id.* at ¶ 14. If mail was returned as undeliverable, the Claims Administrator worked to obtain updated contact information and, when it did, sent the mailing a second time. *Id.* at ¶ 15; *see* Doc. 169 at ¶ 6. In total 26,532 class members received notice via mail as of December 6, 2024. Doc. 169 at ¶¶ 5–6.

The Claims Administrator published summary notice in the Wall Street Journal and PR Newswire, Doc. 167-5 at ¶ 16; Doc. 169 at ¶ 7, and it posted the long-form notice and claim form on a website it created for this settlement as well as a third-party's legal notice system. Doc. 167-5 at ¶¶ 10–11, 17. The settlement website also contained general information about the settlement and various related court documents, and it

allowed for electronic claim filing.  *Id.* at ¶¶ 17–18; Doc. 169 at ¶ 8.  The website had

2,063 unique visitors and 4,117 page views as of December 6, 2024.  Doc. 169 at ¶ 9.

The Claims Administrator also maintained a toll-free telephone helpline and had received

112 calls as of December 6, 2024.  Doc. 167-5 at ¶ 21; Doc. 169 at ¶ 10.

All class members were informed of how to opt-out or object and of the date and

time of the final settlement hearing.  Doc. 167-5 at 11–12.  Responses from brokers,

engagement with the website and telephone helpline, and the number of claims filed

show that notice was widely received.  The notice was reasonable and satisfies the

requirements of due process.

## V.     Approval of Plan of Allocation

Like the settlement, the proposed plan of allocation must also be fair, reasonable,

and adequate.  *In re Mills Corp. Sec. Litig*, 265 F.R.D. 246, 258 (E.D. Va. 2009).  In this

analysis, courts give "significant respect" to the opinion of class counsel, and "the

allocation need only have a reasonable and rational basis."  *Id.*; *accord Phillips v. Triad

Guar. Inc.*, No. 9-CV-71, 2016 WL 1175152, at *4 (M.D.N.C. Mar. 23, 2016).

Here, the plan of allocation, Doc. 148-2 at 29–37, goes well beyond this minimal

standard.  It was designed by an experienced expert in securities fraud litigation who has

assisted in designing over 150 plans of allocation.  Doc. 143 at ¶¶ 2–3.  The plan links

distribution of the settlement fund to the number of shares a claimant acquired during the

relevant period, with the fund divided among claimants *pro rata* based on their total

estimated damages.  *See* Doc. 148-2 at pp. 30–35 ¶¶ 6–7, 12–15.  This plan has a

reasonable and rational basis, and similar plans have been approved in similar cases.  *See*

20

*Phillips*, 2016 WL 1175152, at \*4; Docs. 144-1, 144-2, 144-3, 144-4, 144-5. No class member objected to the plan. The Court finds that the proposed plan of allocation as set forth in the long-form notice, Doc. 148-2 at 29–37, is fair, reasonable, and adequate.

The plan of allocation provides for undistributed funds to "be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court." Doc. 148-2 at p. 35 ¶ 15. It is the Court's understanding, subject to reconsideration if and when it arises, that *cy pres* distribution of unclaimed settlement funds should address the objectives of the underlying statutes, target the plaintiff class, and provide reasonable certainty that class members will benefit. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018); *Krakauer v. Dish Network, LLC*, No. 14-CV-333, 2020 WL 6292991, at \*3 (M.D.N.C. Oct. 27, 2020).

## VI.    Attorneys' Fees and Expenses

In a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When an attorney recovers a common fund for the benefit of a class, counsel "is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). And in securities class actions, the PSLRA provides that attorneys' fees awards "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).

Courts calculate attorneys' fees in class actions using either the "lodestar" method or the "percentage of fund" method. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d

21

756, 758 (S.D. W. Va. 2009). In a common fund case, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fourth Circuit does not require the use of the percentage of fund method, but district courts in this circuit overwhelmingly apply it. *See Phillips v. Triad Guar. Inc.*, No. 9-CV-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see also Jones*, 601 F. Supp. 2d at 758–59 (collecting cases).

To determine the reasonableness of the fee award, courts assess the factors identified in *Barber v. Kimbrell's, Inc.* or a variant of those factors. *See* 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Phillips*, 2016 WL 2636289, at *3–4. The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d at 226 n.28 (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)).

## A. Application of Barber Factors

Wayne's counsel requests an award of attorneys' fees of $5,032,500, or 33% of the settlement fund, plus interest at the same rate earned by the settlement fund to pay settlement class counsel Bleichmar, local counsel Tin Fulton, and the Law Offices of

22

Susan R. Podolsky. Doc. 165 at 2; Doc. 166 at 7 n.2. Bleichmar will be responsible for the good faith allocation of the awarded fees among counsel. Doc. 148-1 at ¶ 6.2.[7]

The Fourth Circuit has "noted that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) (cleaned up). As discussed *supra*, Wayne's counsel has obtained a good result for the class, especially in light of Bioventus' limited financial resources. *See* Doc. 164 at 16. Lead counsel testifies without contradiction that this settlement is the fifth largest recovery in a securities class action in North Carolina federal courts in 25 years. Doc. 167 at ¶ 78. This factor weighs in favor of the reasonableness of the attorneys' fees request.

At the time of the fee application, Wayne's counsel had spent close to 8,000 hours to litigate and resolve this case. *Id.* at ¶¶ 61–62; Doc. 167-3 (Bleichmar's time); Doc. 167-8 at ¶ 8 (Tin Fulton's time); Doc. 167-9 at ¶ 9 (Podolsky's time). This time included investigation, filing complaints, litigating motions and discovery disputes, analyzing extensive discovery, preparing for depositions, briefing class certification, consulting with experts, and engaging in negotiations to reach a settlement agreement. Doc. 167 at ¶ 62; Doc. 167-8 at ¶ 4; Doc. 167-9 at ¶ 5. And Wayne's counsel took this case on a fully contingent basis, taking on a substantial risk of loss. Doc. 167 at ¶¶ 82–85. The time that Wayne's counsel expended in this case prevented them from working on other matters and supports the reasonableness of the requested award.

---

[7] There was no objection filed from other attorneys for the plaintiffs to this proposal.

23

Securities fraud cases like this one raise difficult and complex questions, *see In re Mills Corp.*, 265 F.R.D. at 263, and require highly skilled attorneys. *See Phillips*, 2016 WL 2636289, at *5. This case required Wayne's counsel to understand technical details of healthcare benefits and analyze an extensive and complex record. Doc. 167 at ¶¶ 71–76. As discussed *supra*, Wayne's counsel is well-respected and experienced in class actions, and counsel has obtained a good result in a complex case. These factors support the reasonableness of the requested award.

Finally, the requested award of 33% of the settlement fund is reasonable and customary when compared to attorneys' fees awards in similar cases. Courts in the Fourth Circuit have found awards of approximately one-third of the class fund to be reasonable. *See, e.g.*, *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (affirming fee award of 43% of common fund but acknowledging it approached "the upper limit of a permissible recovery"); *In re Novant Health, Inc.*, No. 22-CV-697, 2024 WL 3028443, at *9 (M.D.N.C. June 17, 2024) (approving attorneys' fees award of one-third of common fund); *Chrismon v. Pizza*, No. 19-CV-155, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) (approving attorneys' fees award of one-third of settlement fund and collecting cases). And in other common fund securities fraud class action settlements, courts in this circuit commonly award approximately one-third of the fund. *See, e.g.*, *Phillips*, 2016 WL 2636289, at *9 (approving attorneys' fees award of 30% of settlement amount); *In re 2U, Inc. Sec. Class Action*, No. 19-CV-3455, 2022 WL 22839218, at *3 (D. Md. Dec. 9, 2022) (awarding attorneys' fees of 33.4% of fund); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, No. 19-CV-982, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021)

24

(awarding attorneys' fees of one-third of fund).  Under the *Barber* factors,[8] the requested award of attorneys' fees of $5,032,500 is reasonable.

## B.  Lodestar Cross-Check

Courts that apply the percentage of funds method can also conduct a lodestar cross-check to evaluate the reasonableness of an attorneys' fee award.  *Phillips*, 2016 WL 2636289, at *7.  To calculate a lodestar figure, courts multiply a reasonable hourly rate by the hours reasonably expended.  *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).  "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar."  *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014).  When courts use the lodestar cross-check, they "need not apply the exhaustive scrutiny typically mandated" and can "accept the hours estimates provided by Lead Counsel."  *In re Mills Corp.*, 265 F.R.D. at 264 (cleaned up).

Wayne's counsel spent a total of 7,853.40 hours to litigate and resolve this case.  Doc. 167 at ¶¶ 61–62; Doc. 167-3; Doc. 167-8 at ¶ 8; Doc. 167-9 at ¶ 9.  Bleichmar concentrated its efforts among a small number of attorneys to ensure work was done efficiently and without unnecessary duplication.  Doc. 167 at ¶ 70; *see* Doc. 167-3.  The reported hours constitute a reasonable basis for a cross-check.  *See In re Mills Corp.*, 265 F.R.D. at 264.

---

[8] Wayne's counsel notes, and the Court agrees, that two *Barber* factors are not applicable here:  the time limitations imposed by the client or circumstances and the nature and length of the professional relationship between attorney and client.  Doc. 166 at 11–12.

25

To decide a reasonable billing rate, courts look to the prevailing market rates, including the attorneys' actual billing rate and "fees paid to attorneys of comparable skill in similar circumstances." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Courts often recognize national market rates when deciding reasonable billing rates for complex class action litigation. *See Phillips*, 2016 WL 2636289, at *7 (citing *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001)) (describing the market for attorneys in PSLRA class actions as "nationwide"); *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 772–73 (D. Md. 2022) (same for ERISA).

The reported billing rates for attorneys and professional staff in this matter range from $395 to $1,250 an hour and are based on their customary rates. Doc. 167 at ¶¶ 66–67; Doc. 167-3; Doc. 167-8 at ¶¶ 7–8; Doc. 167-9 at ¶¶ 8–9. Counsel testifies that their rates are similar to those charged by attorneys with equivalent experience and credentials in this area of law. Doc. 167 at ¶¶ 67–68; Doc. 167-8 at ¶ 9; Doc. 167-9 at ¶ 10. While on the high side, these hourly rates are on par with rates recently approved in securities class action litigation. *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059, 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (describing billing rates from $395 to $1,100 as "comparable to peer law firms in recent years"); *Voulgaris v. Array Biopharma Inc.*, No. 17-CV-2789, 2021 WL 6331178, at *14 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023) (rejecting argument that rates of $455 to $1,050 were "exorbitant"); *In re Lyft Inc. Sec. Litig.*, No. 19-CV-2690, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (finding rates of $250 to $1,200 reasonable).

26

Using the hourly rates submitted by counsel, the lodestar value here is $6,145,414, Doc. 167 at ¶ 61 (counsel's computation confirmed by the Court), and the requested fee amount of $5,032,500 represents a lodestar multiplier of 0.82. Doc. 166 at 15 (counsel's computation confirmed by the Court). Using a slightly lower rate for the higher hourly rate, as is more in line with fees approved recently, the actual value of their legal work is still well above the requested fee amount, and the multiplier is still below 1.

Courts have approved fees with multipliers well above this. *See Jones*, 601 F. Supp. 2d at 766 (stating courts generally find multipliers "between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *McCune v. Faneuil Inc.*, No. 23-CV-41, 2024 WL 3811411, at *7 (E.D. Va. Aug. 13, 2024) (describing a multiplier of 1.95 as "below the range that courts in this circuit have consistently held as reasonable" and collecting cases); *cf. Phillips*, 2016 WL 2636289, at *8 (noting a 0.35 multiplier resulted from high hourly rates but was "so far below those generally accepted as demonstrating reasonableness" as to suggest overall reasonableness of the requested fee). And it is likely this multiplier will go down further as counsel oversee the distribution to class members and complete other tasks essential to fully resolving the matter. The lodestar cross-check confirms that the requested attorneys' fees are reasonable. Wayne's additional request for interest is reasonable given such a low lodestar multiplier. *See Phillips*, 2016 WL 2636289, at *9 (approving attorneys' fees award plus interest); *In re 2U*, 2022 WL 22839218, at *3 (same). The Court approves an attorneys' fee award of $5,032,500 plus interest at the same rate earned by the settlement fund.

27

## C. Firm Expenses

Rule 23(h) allows courts approving class action settlements to award nontaxable costs authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Courts in the Fourth Circuit will allow reasonable, litigation-related expenses in addition to the fee award. *See Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014); *Binotti v. Duke Univ.*, No. 20-CV-470, 2021 WL 5366877, at *5 (M.D.N.C. Aug. 30, 2021).

Wayne requests an award of $623,509 in litigation expenses plus interest at the same rate earned by the settlement fund. Doc. 165 at 2. These expenses are comprised of $291,533 for expert fees, $191,758 for litigation support vendor fees, $74,356 to pay outside counsel for former Bioventus employees who provided information used in the amended complaint, $19,427 for mediation fees, $18,948 for court reporter services, $12,217 for service and filing fees, $5,916 for computer research, $4,830 for out of town transportation, and various smaller expenses for travel and mailing. Doc. 167-6 at 2; *see* Doc. 167 at ¶ 96 (providing details for some of these expenses).

Lead counsel testifies that this list of expenses is accurate and based on information that counsel maintained as expenses were incurred, Doc. 167 at ¶ 94, and that these expenses were necessary for this litigation. *Id.* at ¶ 95. The fees are in line with expenses the Court has seen in other complex litigation. The long-form notice stated that lead counsel would request expenses up to $800,000, Doc. 148-2 at 6, and there have been no objections from class members. *See* Doc. 169 at ¶ 12. The requested amount is fair and reasonable, as is the additional request for interest. *See Phillips*, 2016 WL 2636289, at *9 (approving expenses award plus interest); *In re 2U*, 2022 WL 22839218,

at *3 (same).  The Court approves an award of $623,509 plus interest at the same rate earned by the settlement fund to cover litigation-related expenses.

## VII.  Service Award

Service awards are "fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize [the representatives'] willingness to act as a private attorney general."  *Berry*, 807 F.3d at 613 (cleaned up).  But in securities litigation, the PSLRA restricts service awards to class representatives' "reasonable costs and expenses . . . directly relating to the representation of the class."  15 U.S.C. § 78u-4(a)(4); *see* Rubenstein, *supra*, § 17:19.

Wayne requests a service award of $11,813.94.  Doc. 165 at 2.  As discussed *supra*, Wayne has been involved and active in this case.  *See* Doc. 91 at ¶ 7; Doc. 142 at ¶¶ 5, 7–8; Doc. 167-1 at ¶ 4.  Wayne has been in regular contact with Lead Counsel, reviewed major motions and pleadings, responded to discovery requests, and prepared for and participated in depositions and the full day mediation session.  Doc. 142 at ¶¶ 5, 7–8; Doc. 167-1 at ¶¶ 4, 6.

The service award is reasonable based on the time these tasks would reasonably take.[9]  It is also reasonable compared to other service awards approved in this district and the Fourth Circuit.  *See Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 473 (S.D. W. Va. 2010) (granting award of $15,000 per plaintiff for six named plaintiffs); *In re MI*

---

[9] Wayne's counsel stated to the Court at the final settlement hearing that the requested service award is based on 136 hours that five Wayne employees committed to this litigation.

29

*Windows & Doors Inc. Prods. Liab. Litig.*, No. 12-CV-1, 2015 WL 4487734, at *6 (D.S.C. July 23, 2015) (approving service award of $5,000 for each named plaintiff); *Kruger v. Novant Health, Inc.*, No. 14-CV-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016) (approving $25,000 service award for each of seven representatives). And it is appropriate when compared to service awards approved in common fund securities fraud class action settlements. *See, e.g.*, *In re Under Armour Sec. Litig.*, No. 17-CV-388, 2024 WL 4715511, at *2 (D. Md. Nov. 7, 2024) (approving service award of $30,000 to lead plaintiff); *Klein v. Altria Grp., Inc.*, No. 20-CV-75, 2022 WL 16946243, at *5 (E.D. Va. Mar. 31, 2022) (approving service awards of $20,000 and $28,775 to lead plaintiffs); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (approving service awards of $16,405 and $6,723.73 to lead plaintiffs). The Court concludes that a service award of $11,813.94 to Wayne is reasonable.

## VIII. Conclusion

Final certification of the class and approval of the class action settlement and plan of allocation is appropriate. The requirements of Rule 23 are met, and settlement is in the best interests of the class members. The request for attorneys' fees, expenses, and a service award is also reasonable. Final judgment is entered concurrently.

It is **ORDERED** that:

1. The lead plaintiff's motion for final approval of proposed class action settlement and approval of the plan of allocation, Doc. 163, is **GRANTED**. The earlier motion for class certification, Doc. 89, is **TERMINATED** as moot.

2. For purposes of this settlement, the Court finally certifies the class as defined in the amended Stipulation, Doc. 148-1 at ¶ 1.29, certifies Wayne as class representative, and confirms the appointment of Wayne's counsel as class counsel.

3. The lead plaintiff's counsel's motion for attorneys' fees, expenses and lead plaintiff's reasonable costs and expenses, Doc. 165, is **GRANTED** as follows:

   a. Lead Plaintiff's Counsel's request for attorneys' fees of $5,032,500, plus interest at the same rate earned by the settlement fund, to be paid from the settlement fund is **GRANTED**.

   b. Lead Plaintiff's Counsel's request for reimbursement of $623,509 in expenses, plus interest at the same rate earned by the settlement fund, to be paid from the settlement fund is **GRANTED**.

   c. Lead Plaintiff's request for a service award of $11,813.94 to be paid from the settlement fund is **GRANTED**.

4. The Claims Administrator **SHALL** make all required payments from the settlement fund in accordance with the amounts and the times set forth in the settlement agreement and plan of allocation, including all payments to settlement class members who submitted an approved claim, as approved herein; for the attorneys' fees, costs, and service awards approved herein; and for all settlement administration costs.

5. All funds held by the Claims Administrator **SHALL** be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the settlement or further order of the Court.

6. No later than June 16, 2025, the Claims Administrator **SHALL** file an interim status report concerning administration costs and distributions. The Claims Administrator **SHALL** file a final status report concerning administration costs and distributions no later than December 19, 2025.

7. Once the final status report is filed, the lead plaintiff and class counsel **SHALL** confer about a *cy pres* recipient and **SHALL** file a motion no later than January 9, 2026, or a notice that there are no undistributed funds. The Court further retains jurisdiction to approve a *cy pres* recipient or recipients, subject to the appropriate standards.

8. The parties shall bear their own costs except as provided by the settlement agreement and as ordered herein.

This the 18th day of December, 2024.

_____
UNITED STATES DISTRICT JUDGE